IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LISA K. JONES                                                                                                         PLAINTIFF

        v.                              Civil No. 10-2177

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                              DEFENDANT

## MEMORANDUM OPINION

### I.    Factual and Procedural Background

Plaintiff, Lisa K. Jones, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on May 6, 2008, alleging an *amended* disability onset date of April 23, 2008, due to fibromyalgia, associated muscle and joint pain, abdominal pain, and depression.[1]  Tr. 9, 40, 156, 193.  On the alleged onset date, Plaintiff was forty years old with the equivalent of a high school education.  Tr. 14, 29.  She has no past relevant work.  Tr. 14.

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 80-85, 98-101.  At Plaintiff's request, an administrative hearing was held on July 23, 2009.  Tr. 23-50.  Plaintiff was present at this hearing and represented by counsel.  The ALJ rendered an unfavorable decision on February 16, 2010, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 6-16.

---

[1] Plaintiff initially alleged an onset date of March 1, 2004.  Tr. 157.  At the administrative hearing, Plaintiff amended her onset date to April 23, 2008.  Tr. 9, 25.

Subsequently, the Appeals Council denied Plaintiff's Request for Review on October 22, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. Plaintiff now seeks judicial review of that decision.

## II.  Medical History

### A.  Arkansas Department of Corrections

Plaintiff was incarcerated on drug charges from June 2007 to April 2008. Tr. 225-263. On June 5, 2007, physical examination revealed a heart murmur, acid reflux, and bursitis of the right shoulder and left hip. Tr. 225-227. Plaintiff was temporarily restricted from strenuous physical activity over four hours and prolonged crawling, stooping, running, jumping, walking, or standing. Tr. 226, 242. In July 2007, Plaintiff complained of back pain with mobility. Tr. 240. She was given ibuprofen and acetaminophen and temporarily restricted from sports and weightlifting. Tr. 240. From July 2007 through January 2008, Plaintiff was treated for right-sided pain, blood in her urine, and right lower quadrant tenderness. Tr. 234-239, 254-256, 260. An abdominal ultrasound and renal ultrasound with doppler study yielded normal results. Tr. 248-249, 252-253. A pelvic ultrasound revealed a right ovarian cyst. Tr. 250-251. Donald Anderson, M.D., diagnosed Plaintiff with an ovarian cyst, right flank strain, and muscle pain. Tr. 235. He prescribed Naproxen and Ranitidine and placed temporary restrictions on Plaintiff's ability to play sports, engage in strenuous physical activity, and crawl, stoop, run, jump, walk, or stand for prolonged periods. Tr. 235-239.

### B.  Cornerstone Medical Group

From May 2008 through October 2008, Plaintiff was treated by Suh M. Niba, M.D., at Cornerstone Medical Group. Tr. 265-268, 274-286, 298-306. On May 22, 2008, Plaintiff presented with complaints of right flank pain, urinary frequency, constipation, joint pain, back pain, and muscle

pain/aches. Tr. 265-266, 280-281. On examination, Plaintiff was tender on the right side and had a positive right straight leg raise. Tr. 266. Dr. Niba diagnosed Plaintiff with hematuria and right flank pain. Tr. 266. On July 22, 2008, Plaintiff complained of generalized body aches, joint stiffness, and shoulder, neck, and back pain. Tr. 278-279. She exhibited muscle tenderness over the dorsal, lumbar, and sacral areas. Tr. 279. Dr. Niba assessed Plaintiff with fibromyalgia and prescribed Meloxicam and Tramadol. Tr. 279.

In August 2008, Plaintiff complained of bilateral foot pain, back pain, and depression. Tr. 274-275. On examination, she exhibited muscle tenderness over the dorsal, lumbar, sacral, and coccyx areas. Tr. 275. She appeared anxious and depressed. Tr. 275. Laboratory testing revealed a rheumatoid factor within normal limits. Tr. 282. An ANA screen was negative. Tr. 282. Plaintiff was diagnosed with depression and fibromyalgia. Tr. 275. Dr. Niba prescribed Cymbalta and Darvocet. Tr. 275. He noted that the etiology of Plaintiff's pain was unclear. Tr. 275.

In September 2008, Plaintiff complained of constipation and back pain. Tr. 300-301. Dr. Niba instructed Plaintiff to take magnesium citrate for constipation and continue Darvocet and Meloxicam. Tr. 301. In October 2008, Plaintiff complained of generalized body aches and joint pain without improvement on Darvocet and Meloxicam. Tr. 298-299. Plaintiff was referred for chronic pain management. Tr. 299. A cytoscopy, dated October 15, 2008, revealed a microscopic nephrologic hematuria. Tr. 306.

On October 13, 2008, Dr. Niba completed an Attending Physician's Statement, in which he found Plaintiff would need to take unscheduled breaks during the workday, would miss more than four workdays per month, and could not work eight hours per day for forty hours per week. Tr. 308. Dr. Niba noted that Plaintiff could use both hands for simple grasping, pushing and pulling, and fine

manipulation. Tr. 308. He also determined Plaintiff could use both feet for operating foot controls. Tr. 308. He found Plaintiff met the American Rheumatological criteria for fibromyalgia. Tr. 308.

### C. Van Buren Medical Clinic

In February 2009, Plaintiff began treatment at Van Buren Medical Clinic. Tr. 310-333. On February 2, 2009, Plaintiff saw William Dudding, M.D., with complaints of fibromyalgia and constipation. Tr. 322-323. Dr. Dudding informed Plaintiff that he did not prescribe narcotics for fibromyalgia. Tr. 323. He prescribed Lyrica and instructed Plaintiff to walk two miles a day and perform muscle exercises. Tr. 323. At a follow-up appointment, Plaintiff complained that Lyrica caused headaches and dizziness. Tr. 319-320. Dr. Dudding adjusted Plaintiff's dosage of Lyrica and prescribed Lexapro for depression and Miralax for constipation. Tr. 319.

On April 15, 2007, Plaintiff complained of worsening back and leg pain. Tr. 316-317. On examination, Plaintiff had muscle tightness in the right latissimus dorsi muscle and pain in the lumbosacral area. Tr. 316. Straight leg raising was negative. Tr. 316. X-rays of Plaintiff's lumbar spine revealed five vertebral bodies and minimal spur formation at L3-4, but no fracture or subluxation. Tr. 333. Dr. Dudding discontinued Meloxicam, prescribed Flexeril, and instructed Plaintiff on mild extension and flexion exercises. Tr. 316-317. He informed Plaintiff he would not prescribe any narcotics due to her past history of drug abuse. Tr. 316-317.

At a follow-up appointment in May, Plaintiff stated she stopped taking Flexeril because it caused dizziness. Tr. 313-314. Dr. Dudding reiterated that he would not prescribe narcotic medication given Plaintiff's past drug abuse, especially since she had not been compliant with conservative therapy. Tr. 313. Plaintiff requested an MRI, but Dr. Dudding did not believe it was an appropriate test at that time. Tr. 313. He prescribed Robaxin and increased Plaintiff's dosage of

Lexapro. Tr. 313.

On June 19, 2009, Plaintiff stated that Chlorzoxazone had not helped her muscle spasms. Tr. 310-311. She brought a Residual Functional Capacity ("RFC") questionnaire to the appointment, but Dr. Dudding stated he needed to further evaluate her condition before completing the form. Tr. 310-311. Dr. Dudding prescribed Valium and ordered physical therapy and an occupational evaluation. Tr. 310-311. In July 2009, Dr. Dudding noted Plaintiff was doing subjectively better on Valium and Lexapro, but still complained of intermittent constipation. Tr. 385. He instructed Plaintiff to continue MiraLax and add FiberCon tablets. Tr. 385.

On October 15, 2009, Plaintiff exhibited tightness across her shoulders. Tr. 382-383. She was given refills for Lyrica, Lexapro, and Valium. Tr. 382. In February 2010, Dr. Dudding prescribed Mobic due to a slightly elevated sedimentation rate. Tr. 375-376. At a follow-up appointment, Plaintiff stated Mobic was not helpful and she was more depressed. Tr. 371-374. On examination, Plaintiff's paraspinous muscles were tight and warm on the right side. Tr. 373. Dr. Dudding discontinued Lexapro and started Plaintiff on Pristiq. Tr. 373. He also decreased Plaintiff's dosage of Valium and instructed her to continue Mobic for another month. Tr. 373. Dr. Dudding noted that he was not completely comfortable with the diagnosis of fibromyalgia. Tr. 373.

D. Rebecca Floyd, M.D.

On August 24, 2009, Plaintiff was referred to Rebecca Floyd, M.D., for a consultative physical evaluation, which was actually performed by Marie Pham-Russell, APN. Tr. 334-338. On examination, Plaintiff had a negative straight leg raise. Tr. 335. Ms. Pham-Russell found no evidence of muscle weakness or atrophy, and limb function was within normal limits. Tr. 335. Plaintiff had normal passive range of motion in her shoulders, elbows, wrists, hands, hips, knees, and

ankles. Tr. 336. She had normal range of motion in both her cervical and lumbar spine. Tr. 336. Ms. Pham-Russell found no limitation in Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. Tr. 337.

    E.  <u>Timothy Bell, D.O.</u>

Due to pelvic pain, Plaintiff had pelvic ultrasounds performed in January 2010. Tr. 392-395, 445-459. Results showed uterine fibroids, thickened endometrium, and multiple ovarian cysts. Tr. 392-395, 456-459. Plaintiff was assessed with uterine fibroids, chronic pelvic inflammatory disease, multiple ovarian cysts, and pelvic adhesions. Tr. 427-436. As a result, Plaintiff had a vaginal hysterectomy with a bilateral salpingo-oophorectomy in May 2010. Tr. 340-366, 427-436.

    F.  <u>Summit Medical Center</u>

On June 30, 2010, Plaintiff presented to Summit Medical Center after falling and injuring her left side. Tr. 390. X-rays of Plaintiff's left knee revealed well-maintained joint spaces and no fractures or other abnormalities. Tr. 390. X-rays of Plaintiff's left hip revealed no fractures or other abnormalities. Tr. 388. A CT of Plaintiff's lower extremities revealed mild degenerative changes and sclerotic-appearing areas within the pelvis adjacent to the acetabulum. Tr. 389. No other abnormalities were noted. Tr. 389.

**III.**  **<u>Applicable Law</u>**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether

evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

      To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.   ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since April 23, 2008, the amended onset date. Tr. 11. At step two, the ALJ found Plaintiff suffered from fibromyalgia, which was considered a severe impairment under the Act. Tr. 11-12. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 12.

At step four, the ALJ found Plaintiff had the RFC to lift/carry twenty pounds occasionally and ten pounds frequently, sit, stand, and/or walk for about six hours during an eight-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 12-14. Mentally, the ALJ determined Plaintiff could perform unskilled work. Tr. 12-14.

Once the ALJ determined Plaintiff had no past relevant work, he moved to step five. Tr. 14. After receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2] Tr. 14-15. Accordingly, the ALJ determined Plaintiff was not under a disability from April 23, 2008, the amended onset date, through February 16, 2010, the date of the decision. Tr. 15-16.

**V.   Discussion**

On appeal, Plaintiff contends the ALJ erred by: (1) improperly determining her RFC; and (2) dismissing her subjective complaints.[3] *See* Pl.'s Br. 7-15. For the following reasons, the court finds

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as cashier, of which there are 5000 jobs regionally and 540,000 jobs nationally, mail clerk, of which there are 500 jobs regionally and 79,000 jobs nationally, and hand packager, of which there are 2100 jobs regionally and 203,000 jobs nationally. Tr. 15.

[3] Many of Plaintiff's arguments are relevant to the ALJ's RFC evaluation and are addressed in Section V(A) of this opinion.

that substantial evidence supports the ALJ's decision.

### A. RFC Assessment

Plaintiff contends the ALJ's RFC assessment did not properly reflect her mental and physical limitations. *See* Pl.'s Br. 7-13. At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

### 1. Physical Impairments

First, Plaintiff argues the ALJ incorrectly attributed the findings of Ms. Pham-Russell, APN, to Dr. Floyd. *See* Pl.'s Br. 7-8. After reviewing the record, it appears that Ms. Pham-Russell, not Dr. Floyd, performed and signed the consultative evaluation. Tr. 334-338; 20 C.F.R. § 404.1519g(c) ("the medical source we choose may use support staff to help perform the consultative examination"). A nurse practitioner is not considered an "acceptable medical source." However, an ALJ may consider evidence from "other sources" to show severity of a claimant's impairment(s) and how it affects his or her ability to work. 20 C.F.R. § 404.1513(d). The ALJ afforded greater weight to Ms. Pham-Russell's evaluation due to "comprehensive and well documented physical

examination findings" rather than her ultimate conclusion. Tr. 14. This is evident by the fact that the ALJ did not adopt Ms. Pham-Russell's determination that Plaintiff had no physical restrictions. To the contrary, he limited Plaintiff to light work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 12-14. Thus, despite the ALJ's factual error concerning who performed the physical examination, his ultimate RFC determination was based on all the evidence of record, not just Ms. Pham-Russell's opinion. As such, the court finds that the ALJ's factual error was harmless.

Additionally, Plaintiff contends the ALJ should have afforded greater weight to Dr. Niba's Attending Physician's Statement. *See* Pl.'s Br. 8-11. The court disagrees. Dr. Niba's Attending Physician's Statement was a one-page checklist, in which he determined Plaintiff could not perform full-time work. *See Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) (treating physician's opinion deserved no greater deference than any other physician's opinion when it consisted of nothing more than vague, conclusory statements); *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (a medical source opinion that a claimant is "disabled" involves an issue reserved for the Commissioner and is not the type of medical opinion entitled to controlling weight). Dr. Niba provided no objective findings or other support for his conclusion, and his opinion is not supported by the medical evidence of record. Accordingly, the ALJ did not err in dismissing Dr. Niba's conclusory Attending Physician's Statement.

Fibromyalgia[4] is an elusive diagnosis that is largely based on subjective complaints and cannot be confirmed by diagnostic testing. *See Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009).

---

[4] Fibromyalgia is characterized by "generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 375 (Robert S. Porter, M.D., et al., eds., 19th ed. 2011).

However, not every diagnosis of fibromyalgia warrants a finding of disability. *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011).

Dr. Dudding, Plaintiff's other treating physician, repeatedly noted that he was not entirely comfortable with the diagnosis of fibromyalgia. Tr. 372-373; *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (it is the ALJ's function to resolve conflicts of opinion among various treating and examining physicians). Moreover, he refused to complete a physical RFC assessment, stating he needed to further evaluate Plaintiff's condition. Tr. 310-311. Dr. Dudding also noted Plaintiff did not comply with conservative treatment efforts, including physical and occupational therapy evaluations. Tr. 313; *see Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (claimant's failure to attend physical therapy appointments was inconsistent with complaints of disabling pain). Although Plaintiff alleges she could not afford physical therapy, she has not sought treatment at any low-cost clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial condition. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). For the aforementioned reasons, the court finds that substantial evidence supports the ALJ's physical RFC determination.

    2. Mental Impairments

The ALJ did not err in determining Plaintiff's depression was non-severe. Plaintiff has no history of mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional). Plaintiff stated she could go out alone, drive, shop for groceries, and get along with others without difficulty. Tr. 167-168. Additionally, in July 2009, Plaintiff stated she was doing better on Valium and Lexapro. Tr. 385; *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an

impairment that can be controlled by treatment or medication is not considered disabling). Plaintiff's lack of mental health treatment and reported activities are inconsistent with her complaints of severe depression. Moreover, despite his finding of non-severe depression, the ALJ took into account Plaintiff's mental limitations when he restricted her to unskilled work. Tr. 12; *see* 20 C.F.R. § 404.1545(a)(2) (ALJ will consider both severe and non-severe impairments in determining a claimant's RFC); *see also Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001) (ALJ may issue decision without obtaining additional evidence if existing evidence provides sufficient basis for decision). For these reasons, substantial evidence supports the ALJ's determination that Plaintiff's depression was non-severe.

  B. <u>Subjective Complaints</u>

  Plaintiff alleges the ALJ improperly dismissed her subjective complaints. *See* Pl.'s Br. 13-15. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons. With regard to activities of daily living, the ALJ noted that Plaintiff is able to drive, spend time with others, shop for groceries, do some household chores, and perform a wide range of activities independently and effectively. Tr. 11, 37, 45, 165-167; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). The ALJ also noted periods of noncompliance with medication and physical therapy. Tr. 13-14, 313; *see Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (noncompliance with medical treatment). Despite her complaints of depression, Plaintiff failed to seek mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007). Finally, the ALJ found that Plaintiff's subjective complaints were simply inconsistent with the objective evidence in the record. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility analysis.

**VI.     Conclusion:**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 8th day of February 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE